## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **KEVIN D. NEWCOMB,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **Case No.   15-cv-1363-MJR-SCW** |
| ) | |
| **WEXFORD HEALTH SERVICES, INC.,** ) | |
| **JOHN COE, BETH TREDWAY, and** ) | |
| **STEPHEN B. DUNCAN,** ) | |
| ) | |
| **Defendants.** | |

## REPORT AND RECOMMENDATION

**WILLIAMS, Magistrate Judge:**

### INTRODUCTION

Pursuant to 42 U.S.C. § 1983, *pro se* Plaintiff Kevin Newcomb filed his complaint against Wexford Health Services, Inc., John Coe, Beth Tredway, and Stephen B. Duncan alleging that the Defendants were deliberately indifferent in (Count 1) failing to provide him with AFO braces, long term physical therapy, or a referral to a neurologist, and (Count 2) placing him in segregation without a wheelchair or AFO braces which hindered his ability to use the toilet or exercise.   This matter is before the Court on a motion for summary judgment filed by Stephen B. Duncan and Beth Tredway (Docs. 45 and 46).   Defendants Duncan and Tredway argue that Plaintiff failed to exhaust his administrative remedies against them prior to filing suit.   Plaintiff has filed a response (Doc. 54) in opposition to the motion.   The matter has now been referred to United States Magistrate Judge Stephen C. Williams by United States District Judge Michael J.

Reagan pursuant to **28 U.S.C. §§ 636(b)(1)(B) and (c)**, *Federal Rule of Civil Procedure*
*72(b)*, and **Local Rule 72.1(a)**.   The undersigned held an evidentiary hearing on January
20, 2017.   Based on the following, it is **RECOMMENDED** that the Court **GRANT**
Defendants' motion for summary judgment.

FINDINGS OF FACT

**A. Factual and Procedural Background**

On December 15, 2015, Plaintiff filed his complaint against Defendants Wexford
Health Services, Inc., John Coe, Stephen Duncan, and Beth Tredway for their deliberate
indifference in failing to provide him with braces, therapy, or a wheelchair (Doc. 1).   As
narrowed by the Court's threshold order (Doc. 6), Plaintiff's complaint alleges that
Defendants were deliberately indifferent in failing to provide him with AFO braces, long
term physical therapy, and a referral to a neurologist (Count 1), as well as in failing to
provide him with AFO braces or a wheelchair while he was in segregation (Count 2).
Specifically, Plaintiff's complaint alleges that he suffers from cerebral palsy and that in
2014 his condition deteriorated while at Illinois River Correctional Center and he was
sent to the hospital (Doc. 6, p. 1).   At that time, he alleges that the medical providers
recommended ankle foot orthosis ("AFO braces"), long term physical therapy, and
further examination by a neurologist (*Id.*).   Before he could receive treatment, however,
he was transferred to Lawrence Correctional Center on January 21, 2015 (*Id.*).   At
Lawrence, Plaintiff was provided a "pull up wrap" for sports injuries instead of the AFO
braces (*Id.*).   He received physical therapy for only five weeks and never saw a

neurologist (*Id*.).   Plaintiff was also placed in segregation and was not allowed to use his wheelchair (Doc. 6, p. 1).   Plaintiff alleges that, in addition to Wexford and the medical Defendant John Coe, Lawrence officials Stephen Duncan (warden) and Beth Tredway (assistant warden) denied him medical care due to the fact that Wexford did not want inmates sent out for care as such care is expensive (*Id*. at p. 2).

This matter is before the Court on a summary judgment filed by Defendants Stephen B. Duncan and Beth Tredway for failure to exhaust administrative remedies (Docs. 45 and 46).   Defendants argue that Plaintiff failed to exhaust his administrative remedies because he did not wait for a response to the grievances at the institutional level before submitting the grievances to the ARB.   Plaintiff attaches three grievances to his complaint.   Two of those grievances are dated October 25, 2015 and are marked as emergency grievances (Doc. 103, p. 2-3, 8-9).   Plaintiff's first grievance states that Warden Duncan, Dr. Coe, and Wexford Medical Care were deliberately indifferent to his case (Doc. 1-3, p. 2-3).   That grievance alleges that his wheelchair was taken away from him because he made a knife out of the parts, an accusation he admits is true (*Id*.).   But Plaintiff argues that he needs his wheelchair but his requests have been refused and he has fell down eight times and voided on himself four times due to not having a wheelchair (*Id*.).   That grievance was received by the ARB on November 19, 2015 and returned to Plaintiff because it did not include a counselor, grievance officer, or chief administrative officer response (Doc. 1-3, p. 1).

Plaintiff's second grievance dated October 25, 2015 alleges that he was

recommended physical therapy on December 22, 2014 by an outside doctor who also requested a referral to a neurologist and AFO braces and Wexford and IDOC have refused to provide him with these items (Doc. 1-3, p. 8-9).   Plaintiff's grievance alleges that Dr. Coe told him that the warden instructed him not to send inmates out of the facility for medical care unless it was life or death because they were broke (*Id*.).   Coe also would only provide Plaintiff with a sport brace instead of long term device to support his injuries related to cerebral palsy (*Id*.).   He also only received five weeks of physical therapy before it was cancelled (*Id*.).   Plaintiff marked the grievance as an emergency on October 25, 2015 and it was received by the ARB on November 19, 2015. The grievance was returned because it failed to include a response from the counselor, grievance officer, or chief administrative officer (Doc. 1-3, p. 7).

In addition to the two October 25, 2015 grievances, the ARB also received a grievance dated October 27, 2015.   That grievance was also marked as an emergency (Doc. 1-3, p. 11-12).   Plaintiff alleged in that grievance that Warden Duncan received an emergency grievance on October 4 stating that he feared for his life due to being threatened by gang members which the warden returned as not an emergency (Doc. 1-3, p. 11).   Plaintiff alleges that because his requests for protection were denied, he made a knife, although he alleges he only got half way through the process of making the knife when he decided it was a bad idea and destroyed it (*Id*. at p. 11-12).   Plaintiff grieved the failure to protect him by the guards at Lawrence (*Id*.).   That grievance was also received by the ARB on November 19, 2015 and returned to Plaintiff for failing to attach

responses from his counselor, grievance officer, and chief administrative officer (Doc. 1-3, p. 10).

The undersigned notes that along with these grievances, the ARB also received a letter from Plaintiff which indicated that he sent the three grievances to Warden Duncan on two occasions in the month prior to submitting the grievances to the ARB (Doc. 1-2, p. 11). The grievances were labeled emergency grievances and Duncan never responded to any of them (*Id.*). He put in several requests regarding the status of the grievances but never heard back from anyone (*Id.*).

Defendant Duncan argues that Plaintiff failed to exhaust his administrative remedies as to him because he did not provide the proper documents to the ARB, including responses from the counselor, grievance officer, and chief administrative officer. Plaintiff also failed to submit any further documentation to the ARB after receiving the ARB's response. Defendant Tredway argues that neither of the October 25, 2015 grievances list her or grieve any claims against her.

Plaintiff, in response, argues that the prison has an unfair advantage in the grievance process and have sought to deny Plaintiff his right to exhaust his claims. Plaintiff also offered an affidavit indicating that Counselor Collin Ray tore up grievances in front of him and the grievance officer never provided him responses to *any* grievances he ever filed while at Lawrence Correctional Center (Doc. 54, p. 9). Plaintiff states that he believes the system is rigged given the low percentage of grievances in which inmates actually receive their requested relief and testifies that he wrote to the ARB to inform

them that his grievances are being destroyed at Lawrence (Id.).   Plaintiff believes that
on several occasions where he submitted grievances they were not returned because
officials throw grievances away in order to keep inmates from properly exhausting (Doc.
54, p. 11).   Plaintiff states that there are several grievances against all of the Defendants
that he wrote, but they were destroyed by his counselor (Id. at p. 9).

   B. *Pavey* **Hearing**

As there is a dispute of fact as to whether Plaintiff was thwarted in his attempts to
exhaust his administrative remedies when his emergency grievances were not returned,
the Court held an evidentiary hearing on January 20, 2017.

Defendants offered no evidence at the evidentiary hearing.   They only argued
that neither grievance mentioned Beth Tredway.

Plaintiff testified as to his emergency grievances.   Plaintiff testified that he spoke
with Tredway on two occasions before she was terminated and handed her one of the
emergency grievances.   He testified that one of the October 25 grievances mentioned
Tredway and stated that he brought the issues up to her initially but she refused to help.
Plaintiff testified that Tredway was later fired by the prison.   He stated that his October
25 grievance indicated that Tredway was fired for issues regarding the Inmate Benefit
Fund.   Plaintiff stated that the grievance indicated those funds could have been used for
his medical treatment if Tredway had not misappropriated them.

As to the October 25 grievances themselves, Plaintiff testified that he submitted
them as an emergency and the warden responded to them.   Plaintiff testified that he

received a response from the chief administrative officer, finding the grievance was not an emergency.   Plaintiff testified that after receiving a response from the warden he thought the grievance was fully exhausted but still forwarded the grievance to the ARB for review.   Plaintiff testified that he also gave the grievance to his counselor, Colin Ray, but that he never got it back from him.   Plaintiff noted that Ray was notorious for throwing grievances away.   Plaintiff testified that he submitted the grievance with the warden's signature to the Court in his initial complaint packet sent to the Court.   He also testified that he sent the grievance to the defense attorneys as well.   In addition to the grievance with the ARB file stamp, Plaintiff testified that he submitted a copy of the October 25 grievance with the warden's signature to the Court.   Plaintiff testified that he received the grievance back from the warden the same day that he submitted it.

Plaintiff further testified that the grievance he received from the warden was not the grievance that he submitted to the ARB.   Plaintiff testified that he made copies of the original grievance and sent one to the warden.   When he received a response from the warden, he kept that response.   He then sent copies of the original grievance, without the warden's response, to the ARB, the Court, and defense counsel.   He testified that he also made copies of the grievance with the warden's response and he thought he sent a copy to the Court.   Plaintiff testified that he had a copy of the warden's response in his cell.   Plaintiff stated that the prison's records would show that the grievances had been returned as not an emergency.

### C. October 25, 2015 Grievances

At the hearing, Plaintiff asked for leave to submit the October 25, 2015 grievances which he received from the warden.   The undersigned did not initially grant Plaintiff leave but entered an Order after the hearing, directing Plaintiff to submit copies of those grievances.   Plaintiff submitted those grievances on February 3, 2017 (Doc. 62).   Both of the October 25, 2015 grievances are attached to the submission (Doc. 62, p. 5-8).   Both grievances indicate that they were received by the warden on October 27, 2015, deemed not an emergency, and returned to Plaintiff the same day (Doc. 62, p. 5 and 7).

CONCLUSIONS OF LAW

### A. Summary Judgment Standard

Summary Judgment is proper if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [Defendants are] entitled to judgment as a matter of law." *Wragg v. Village of Thornton***, 604 F.3d 464, 467 (7th Cir. 2010).**   Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA").   **42 U.S.C. §1997e(a).**   That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* **(emphasis added).**   The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement.   *Dole v. Chandler***, 438 F.3d 804, 809 (7th Cir. 2006) (noting that '[t]his circuit has taken a strict compliance approach to exhaustion").**

Exhaustion must occur before the suit is filed.   *Ford v. Johnson*, **362 F.3d 395, 398 (7th Cir. 2004).**   Plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending.   *Id.*   Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require."   *Pozo v. McCaughtry*, **286 F.3d 1022, 1025 (7th Cir. 2005).**   Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted."   *Dole*, **438 F.3d at 809.**

Under *Pavey*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge.   *Pavey v. Conley*, **544 F.3d 739, 740-41(7th Cir. 2008).**   Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Court set forth the following recommendations:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate.   (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over.   (3)If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery,

and if necessary a trial, on the merits; and if there is a jury trial, the jury
will make all necessary findings of fact without being bound by (or even
informed of) any of the findings made by the district judge in determining
that the prisoner had exhausted his administrative remedies.

*Id.* at 742.

### B. Illinois Exhaustion Requirements

As an inmate confined within the Illinois Department of Corrections, Plaintiff was

required to follow the regulations contained in the Illinois Department of Correction's

Grievance Procedures for Offenders ("grievance procedures") to properly exhaust his

claims.  **20 Ill. Administrative Code §504.800** *et seq.*  The grievance procedures first

require inmates to speak with the counselor about their complaint.  **20 Ill. Admin. Code

§504.810(a).**  Then, if the counselor does not resolve the issue, the inmate must file a

grievance form directed to the Grievance Officer within 60 days of the incident.  ***Id.***

The grievance form must:

> contain factual details regarding each aspect of the offender's complaint,
> including what happened, when, where, and the name of each person who
> is subject of or who is otherwise involved in the complaint.   The provision
> does not preclude an offender from filing a grievance when the names of
> individuals are not known, but the offender must include as much
> descriptive information about the individual as possible.

**20 Ill. Admin. Code §504.810(a)(b).**  "The Grievance Officer shall [then] consider the

grievance and report his or her findings and recommendations in writing to the Chief

Administrative Officer...[who]shall advise the offender of the decision in writing within

2 months after receipt of the written grievance, where reasonably feasible under the

circumstances." **20 Ill. Admin. Code §504.830(d).**   If the inmate is not satisfied with the Chief Administrative Officer's response, he or she can file an appeal with the Director through the Administrative Review Board ("ARB").   The grievance procedures specifically state, "[i]f after receiving the response of the Chief Administrative Officer, the offender still feels that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director within 30 days after the date of the decision.   Copies of the Grievance Officer's report and the Chief Administrative Officer's decision should be attached." **20 Ill. Admin. Code §504.850(a).** "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." **20 Ill. Admin. Code §504.850(e).** "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, where reasonably feasible under the circumstances.   The offender shall be sent a copy of the Director's decision." **20 Ill. Admin. Code §504.850(f).**

The grievance procedures do allow for an inmate to file an emergency grievance. In order to file an emergency grievance, the inmate must forward the grievance directly to the Chief Administrative Officer ("CAO") who may "[determine] that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus the grievance should be handled on an emergency basis. **20 Ill. Admin. Code §504.840(a).**   If an inmate forwards the grievance to the CAO as an emergency grievance, then the CAO "shall expedite processing of the grievance and

respond to the offender" indicating to him which course he has decided is necessary after reading the grievance. **20 Ill. Admin. Code §504.840(b).** Once the CAO has informed the inmate of his decision, the inmate may then appeal that decision to the ARB on an expedited basis. **20 Ill. Admin. Code §504.850(g).**

### C. Analysis

Here, the undersigned finds that Plaintiff failed to exhaust his administrative remedies prior to filing suit. Plaintiff initially argued in his response to the summary judgment motion that he did not receive a response to his October 25, 2015 grievances. This argument was supported by a letter he attached to the grievances received by the ARB which indicated that he submitted the grievances on two occasions to the warden and he never received a response (Doc. 1-2, p. 11). However, at the evidentiary hearing, Plaintiff testified that he did, indeed, receive the emergency grievances back from the warden, which were deemed not an emergency, but that he did not submit copies of those to the ARB. Instead, he submitted his original grievance, without the warden's response, to the ARB.

In light of Plaintiff's changed story, the undersigned ordered Plaintiff to submit the signed October 25, 2015 grievances to the Court for review. Plaintiff submitted those grievances on February 3, 2017. Both of the October 25, 2015 grievances indicate that they were received by the warden on October 27, 2015, declared not an emergency, and returned to Plaintiff the same day. The submitted grievances support Plaintiff's testimony at the evidentiary hearing.

Thus, the undersigned finds Plaintiff's original argument in his response, as well as the letter initially submitted to the ARB with his October 25, 2015 grievance, to be false.   It is clear from Plaintiff's testimony and the October 25, 2015 grievances recently submitted to the Court that Plaintiff received his grievances back from the warden on October 27, 2015 as Plaintiff testified to at the hearing.   But the grievances were not provided to the ARB.   Plaintiff admits that he did not submit the grievance with the warden's signature to the ARB, but rather kept that grievance and submitted copies of his original grievance to the ARB.   While Plaintiff may appeal the warden's decision regarding an emergency grievance, *see Boyce v. Illinois Department of Corrections*, **661 Fed.Appx. 441 (7th Cir. Sept. 19, 2016)**, without the warden's response or any indication from Plaintiff that he received a response (in fact he submitted a letter with the grievances indicating that he had not received a response), the ARB properly returned the grievances for lacking any response from the institution.   The ARB provided Plaintiff with an opportunity to provide the necessary documents from the institution, indicating in their response that Plaintiff should submit the grievance with copies of the responses from the counselor, grievance officer, and chief administrative officer (Doc. 1-3, p. 1).   Plaintiff failed to respond to the ARB and, thus, failed to exhaust his administrative remedies.   As such, the undersigned finds that the grievances were properly returned to Plaintiff by the ARB and his grievances were procedurally defaulted and not properly exhausted.   *See Pozo v. McCaughtry*, **286 F.3d 1022, 1025 (7th Cir. 2002) (grievance returned as untimely is not considered a decision on the**

**merits and is not exhausted).**

CONCLUSION AND RECOMMENDATION

Accordingly, the undersigned **RECOMMENDS** that the Court **GRANT** Defendants' motion for summary judgment as Plaintiff failed to properly exhaust his October 25, 2015 grievances.  It is **RECOMMENDED** that Plaintiff's claims against Defendants Duncan and Tredway be **DISMISSED without prejudice**.  Should this Report and Recommendation be adopted, the only claims which will remain are Plaintiff's deliberate indifference and conditions of confinement claims against Defendants John Coe and Wexford Health Sources, Inc.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 73.1(b), the parties may object to any or all of the proposed dispositive findings in this Recommendation.   The failure to file a timely objection may result in the waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals.  *See, e.g., Snyder v. Nolen*, **380 F.3d 279, 284 (7th Cir. 2004).**   Accordingly, Objections to this Report and Recommendation must be filed on or before **February 23, 2017**.

**IT IS SO ORDERED**.
DATED: February 6, 2017.

/s/ *Stephen C. Williams*
STEPHEN C. WILLIAMS
United States Magistrate Judge